## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

D AND B AUTOMOTIVE EQUIPMENT, INC.,
a California Corporation d/b/a
AUTOMOTIVE EQUIPMENT,
COLLISION EQUIPMENT SPECIALISTS,
EQUIPMENT SPECIALISTS CO.,
P.A.C.E., INC., a Washington Corporation,
PALLAS EQUIPMENT, INC., a Colorado Corporation,
and HAROLD W. FIZONE,

          Plaintiffs,

    v.                                      Case No. 03-CV-141

SNAP-ON, INC., a Delaware Corporation,
HEIN-WERNER CORPORATION,
a Wisconsin Corporation d/b/a
COLLISION REPAIR EQUIPMENT GROUP,
BLACKHAWK-KANSAS JACK, and
DAVID E. COX,

          Defendants.

## ORDER

This matter comes before the court pursuant to a motion to dismiss filed by defendants Snap-On, Inc. ("Snap-On"), Hein-Werner Corporation ("Hein-Werner"), Blackhawk-Kansas Jack ("Blackhawk"), and David E. Cox ("Cox"). Defendants allege that at Counts Two, Four, Eight, and Eleven, of an eleven-count amended complaint filed by plaintiffs D and B Automotive Equipment, Inc. ("D and B"), Collision Equipment Specialists ("Collision Equipment"), Equipment Specialists Co., ("Equipment Specialists"), P.A.C.E., Inc. ("PACE"), Pallas Equipment, Inc. ("Pallas"),

and Harold W. Fizone ("Fizone"), plaintiffs fail to state a claim upon which relief can be granted. The motion has been fully briefed and is now ready for decision.

## BACKGROUND

The relationship between the parties dates back to 1986, when Automotive Equipment and Hein-Werner first entered into a written distributor and sales agreement. Shortly thereafter, Collision Equipment, Equipment Specialists, PACE, and Pallas entered into similar agreements with Hein-Werner. According to the amended complaint, these agreements granted plaintiffs the rights to "distribute and sell Hein-Werner products to the automobile collision repair industry under various product line names, including Hein-Werner, Kansas Jack, and Blackhawk." (Amended Complaint ¶ 15.)

In 1992, Hein-Werner introduced a new product, known as "the Shark," which plaintiffs were required to sell. Shortly after the introduction of the Shark, Hein-Werner introduced "the Apex" and "the Shark W/32." (*Id.* ¶¶ 21 & 22.) The Apex functioned in a similar way to the Shark, but was touted as a less expensive and more basic product. *(Id.* ¶ 21.) The Shark W/32 was supposed to be an improved version of the original Shark that ran on a Windows operating system. (Id. ¶ 22.)[1] Theoretically, the Shark systems were to be used as a frame-straightening device; the systems operated with computer technology and utilized ultrasonic devices to make accurate and consistent measurements when repairing a vehicle. The Shark

---

[1]These three systems, the Shark, the Apex, and the Shark W/32, will collectively be referred to as "the Shark systems."

systems were manufactured by Snap-On and Hein-Werner, and sold and distributed by plaintiffs D and B, Collision Equipment, Equipment Specialists, PACE, and Pallas. Regrettably, according to the plaintiffs, the Shark systems fell woefully below expectations and had a myriad of serious defects. The seller/distributor relationship between the parties was terminated in 2003, and plaintiffs promptly filed this lawsuit upon the dissolutions of the contractual business relationship.

The amended complaint before the court is structured into 11 counts claiming the following: breach of contract (at Counts One and Seven), fraud (at Counts Two and Eight), breach of implied warranties (at Count Three), violations of unfair trade statutes (at Count Four), tortious interference with contract (at Count Five), tortious interference with prospective business advantage (at Counts Six and Ten), quantum meruit (at Count Nine), and defamation (at Count Eleven). The court's discussion is limited only to the counts defendants moved to dismiss; Counts Two, Four, Eight, and Eleven. In light of the complete diversity of the parties and the amount in controversy exceeding $75,000.00, this court has jurisdiction under 28 U.S.C. § 1332.

## ANALYSIS

The defendants' motion to dismiss asserts that at four of the eleven counts in the plaintiffs' amended complaint, the plaintiffs fail to state a claim upon which relief can be granted, thereby warranting dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). At this stage in the case, the court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiffs. *See Pugle*

*v. Bd. of Trs. Of the Univ of Ill.,* 378 F.3d 659, 662 (7th Cir. 2004). "A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir. 1991)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## I.  COUNT TWO

At Count Two of the amended complaint, plaintiffs allege that in the course of marketing, selling, and distributing the Shark systems, defendants have engaged in a scheme to defraud plaintiffs, their customers, and the public at large, by making false representations regarding the Shark systems. (Amended Complaint ¶ 33.) A previous order of the court granted dismissal of this count for failure to plead with particularity as required by Federal Rule of Civil Procedure 9(b). (*See* March 25, 2004 Order, Doc. # 22 at 7.) In the amended complaint, plaintiffs satisfy the Rule 9(b) requirements and have cured their previous defects because they set forth, with dates, details, and specificity, the conduct they allege constitutes fraud. (*See id.* at ¶ 36a-o.) The amended complaint states the defendants defrauded plaintiffs by:

> continuing to market or sell to plaintiffs and others the Shark systems, including training and support for the same; falsely claiming that plaintiffs and others were not using the Shark systems properly when problems with the Shark systems were raised; falsely representing to plaintiffs and others that they have made modifications to the Shark systems or replaced parts to correct any problems with suing the Shark systems as intended; falsely representing that the vehicle manufacturer specifications data for the Shark systems was accurate; and providing those parts or modifications for the Shark systems to plaintiffs and their customers, including modifications to the Shark systems designed to mask those problems.

(*Id.*) Stated another way, the plaintiffs allege that the defendants have engaged in a scheme to defraud plaintiffs, their customers, and the general public by falsely representing to plaintiffs and others that the Shark systems accurately and continuously take measurements necessary to successfully straighten and realign damaged automobile frames. (*Id.*) Additionally, the court now has the benefit of the actual sale agreements the parties contracted to, as they are attached to defendants' motion to dismiss the amended complaint at Exhibits A-E.

However, defendants argue that Count Two nevertheless must be dismissed because Wisconsin law bars recovery for claims such as the fraud claim asserted by the plaintiffs. Specifically, defendants argue that Wisconsin's economic loss doctrine bars plaintiffs' fraud claim because Snap-On's alleged misrepresentations pertain to the subject matter of the sales representation agreements. Simply stated, the economic loss doctrine "is a judicially created doctrine that bars recovery in tort for strictly economic losses arising from a contract." John J. Laubmeier, *Demystifying Wisconsin's Economic Loss Doctrine*, 2005 Wis. L.Rev. 225 (2005). The purpose of the economic loss doctrine is several-fold; it functions to: (1) maintain the fundamental distinction between tort law and contract law; (2) protect commercial parties' freedom to allocate economic risk by contract; and (3) encourage the party best situated to assess the risk [of] economic loss, the commercial purchaser, to assume, allocate, or insure against that risk. *See Harley-Davidson Motor Co. v. Powersports, Inc.,* 319 F.3d 973, 985 (7th Cir. 2003); *see also Digicorp, Inc. v. Ameritech Corp.* 662 N.W.2d 652, 659 (Wis. 2003).

Courts interpreting this doctrine have made clear that certain recovery tools fall classically within the purview of the doctrine and are thus barred. For example, the economic loss doctrine would undoubtedly bar damages that were solely economic in nature in tort theories of negligence or strict liability. *See Daanen & Janssen, Inc. v. Cedarapids, Inc.* 573 N.W.2d 842, 852 (Wis. 1998). Economic losses are defined as damages resulting from the loss of value of an inadequate or inferior product. *See id.* at 845. In contrast, non-economic losses would be damages relating to personal injuries or property damage unrelated to the products. *See id; see also Northridge Co. v. W.R. Grace & Co.*, 471 N.W.2d 179 (Wis. 1991).

Plaintiffs provide several allegedly false statements from defendants' representatives relating to the Shark systems, and state these create the basis for the fraudulent behavior. For example, plaintiffs argue the following statements constitute fraudulent misrepresentation: "[s]hark is the fast [sic], easiest, and simplest system to use"; and "the Shark system 'delivers accurate, reliable, repeatable information at your fingertips.'" (Amended Complaint ¶¶ 36b, 36o.) The other fraudulent statements relate to the way the Shark systems are constructed, operated, repaired, and designed. *(See id.)*

To begin, it is clear that the damages plaintiffs allege are economic in nature because they relate to the "loss of value of an inadequate or inferior product." *Daanen & Janssen, Inc*, 573 N.W.2d at 845. Moreover, defendants are correct in noting that certain misrepresentation allegations are barred due to the economic loss doctrine as several Wisconsin Supreme Court decisions have supported this. *See*

*Digicorp, Inc. V. Ameritech Corporation*, 662 N.W. 2d 652, 661 (Wis. 2003). The court also agrees that the facts as stated in the amended complaint form the basis for a claim under misrepresentation. To this end, the economic loss doctrine would bar plaintiff's claims as they relate to misrepresentations regarding the Shark systems. *See Tietsworth v. Harely-Davidson,* Inc. 677 N.W.2d 233, 242 (Wis. 2004). This holds true if the misrepresentations were stated or communicated either negligently or intentionally. *See id*; *see also Home Valu, Inc. V. Pep Boys*, 213 F.3d 960, 964 (7th Cir. 2000) (noting that dismissal of tort claims for negligent misrepresentation and strict responsibility misrepresentation as barred by Wisconsin's economic loss doctrine is proper). Furthermore, the court in *Tietsworth* noted that barring such claims on the basis of the economic loss doctrine "furthers the doctrine's central purpose" because to the extent that there are well-developed contractual remedies a party could pursue, there is not a need to create duplicate tort remedies. *Tietsworth*, 677 N.W.2d at 242-43 (citing *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 865 (7th Cir. 1999)). The *Tietsworth* court further articulated that misrepresentation claims could properly be pursued under the contract theories of breach of warranties. Therefore, to the extent that plaintiffs can only suggest fraudulent misrepresentation, these claims would be barred by the economic loss doctrine and the court would be obliged to dismiss Count Two.

However, in plaintiffs' response, they suggest that they may be able to establish facts constituting the account that they were fraudulently *induced* into entering into contracts to sell the Shark systems. (Plaintiff's Response 9.)  Courts

- 7 -
Case 2:03-cv-00141-JPS     Filed 03/27/06     Page 7 of 20     Document 73

have taken three different approaches to fraudulent inducement claims in determining if there is to be application of the economic loss doctrine. *See Kaloti Enterprises, Inc., v. Kellogg Sales Company*, 699 N.W. 2d 205, 217 (Wis. 2005). First, courts have determined that there is no fraudulent inducement exception to the economic loss doctrine; second, courts have determined that there is a general exception for all fraudulent inducement claims; and third, courts have determined that there is a narrow exception for fraud in the inducement where the fraud is extraneous, and not interwoven in regards to the subject matter of the contract. *Id.*

The Michigan Court of Appeals established this third approach in *Huron Tool and Engineering Co. v. Precision Consulting Services*, Inc., 532 N.W. 2d 541 (Mich. 1995), where it articulated that fraud in the inducement would be an exception to the economic loss doctrine where "the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior." *Id.* at 545. However, *Huron Tool* was careful to distinguish between another form of fraud that would induce a party to contract with another: where the "misrepresentations by the dishonest party concerns the quality or character of the goods sold." *Id. Huron Tool* referred to these two distinctions respectively as fraudulent inducement where the fraud is "extraneous" to the subject matter of the contract, and where the fraud is "interwoven" into the contract. *Id*. The *Huron Tool* court recognized these fraud distinctions as significant, too; it held that where the fraud was extraneous to the contract, the economic loss doctrine would not bar

recovery, but where the fraud was interwoven into the contract, the doctrine would bar recovery. *Id.*

Courts in Wisconsin have adopted the *Huron-Tool* application of fraudulent inducement claims; that the economic loss doctrine would not bar claims where a party was fraudulently induced into entering into a contract where the fraud was extraneous, rather than interwoven, to the contract. *Kaloti Enterprises, Inc.,* 699 N.W.2d at 219; *see also Digicorp, Inc. v. Ameritech Corporation,* 662 N.W.2d 652, 662 (stating "we adopt the narrow approach set forth in *Huron Tool*"). *Kaloti* further articulated policy reasons supporting this approach, and introduced a three-part test to apply in determining if this narrow fraudulent inducement exception to the economic loss doctrine would be applicable. *Kaloti*, 699 N.W.2d at 219. For a court to employ the narrow exception to fraudulent inducement such that a claim would not be barred by the economic loss doctrine, *Kaloti* stated that a plaintiff must be able to show: (1) that there was a fraudulent misrepresentation; (2) the misrepresentation occurred before the contract was formed; and (3) that the fraud was extraneous to, rather than interwoven with, the contract. *Id.*

Not only is the position of the *Kaloti* court compelling, this court is bound to apply this approach in determining when fraudulent inducement claims are barred by the economic loss doctrine. *See, e.g. Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 633 (7th Cir. 2002) (stating that courts sitting in diversity are to apply the state substantive law as articulated by the highest court).

The court is confident that the facts as alleged by the plaintiffs establish the first part of the test, that there was a fraudulent misrepresentation. Plaintiffs' amended complaint sets forth numerous incidences and statements they believe to be wholly falsehoods concerning the Shark systems. Second, it is plausible that the misrepresentations occurred before the contract was formed, although plaintiffs are on somewhat less firm ground in regards to the second prong. Although it is clear that the parties had contractual relationships prior to the introduction of the Shark systems in 1992, the supplier agreements before the court date from 1994 through 2001; dates that are *after* introduction of the Shark systems. Thus, chronologically it's feasible that the representations induced plaintiffs into the contracts. However, and most importantly, plaintiffs would not be able to set forth the third prong of the exception to the economic loss doctrine; that the fraud is extraneous to the subject matter of the contract.

*Kaloti* articulated that when the fraud is "extraneous" to the contract, and therefore not barred by the economic loss doctrine, it concerns matters that do not relate to the quality or the characteristics of the "goods for which the parties contracted or otherwise involved performance of the contract." *Kaloti* at 219 . In contrast, misrepresentations regarding "the quality of the character of the goods sold" would be interwoven into the contract. *See id.* Here, the agreements cover the seller and distributor relationships the parties contracted to in regards to selling the various products defendants manufactured, including the Shark systems. There is no question that the misrepresentations related to the goods in the contract;

plaintiffs' entire basis for the fraud at Count Two relates to false statements defendants made about the Shark systems.

As a matter of illustration as to what is not considered "interwoven" into the contract, the *Kaloti* court provides a clear example. In *Kaloti*, the plaintiff sold products such as Nutrigrain bars and Rice Krispie Treat products from defendants Kelloggs. *Kaloti* at 220. No misrepresentations were made about the products themselves; rather, Kelloggs misrepresented to Kaloti that an incipient marketing scheme would obviate Kaloti's ability to sell or resell the products. *Id.* This fact and risk was not bargained for or considered in any contractual agreement the parties had, and was therefore "extraneous" to the contract. Quite clearly, the misrepresentations about the Shark systems were very different from the misrepresentations the *Kaloti* court faced because here, fraud related specifically to the subject matter of the contracts. In sum, Count Two of the plaintiff's amended complaint must be dismissed because as the court discussed above, Wisconsin's economic loss doctrine bars recovery for this fraud claim.

## II. COUNT FOUR

At Count Four, plaintiffs allege violations of trade and consumer statutes of the states in which they are incorporated and located. This court previously dismissed this count for failure to comply with the pleading requirements of Fed. R. Civ. P. 9(b). In the amended complaint, plaintiffs provide a somewhat more detailed account of the alleged violations of the various state law consumer fraud statutes. Plaintiffs allege violations of the following states' statutes: (1) California (Cal. Bus. & Prof.

Code. §§ 17200 & 17500); (2) Colorado (C.R.S. § 6-1-105); (3) Michigan ( M.C.L. §§ 445.356 & 445.903); (4) New York (N.Y. Bus. Code § 349); (5) Washington (R.C.W. § 19.086.20); and (6) Wisconsin (W.S. § 100.18).  However, from the court's reading of the various statutes the plaintiffs allege were violated, the amended complaint does not set forth the necessary facts entitling plaintiffs to relief. As will be discussed below, each of these statutes prohibit conduct that is largely public in nature, rather than a private contractual or business relationship as the parties in this case have. A brief summary of the statutes and elements for a cause of action under each is set forth below.

Section 17200, together with section 17500, of the California Business and Profession Code are consumer protection statutes designed to prohibit any unlawful, unfair or fraudulent business act or practice, and to protect the public by prohibiting false, unfair, misleading or deceptive advertising.  See Cal. Bus & Prof. Code §§ 17200, 17500 (2005); *see also Day v. AT & T Corp,* 74 Cal.Rptr.2d 55, 59 (Cal. 1998).  Although the language of these statutes is broad, California courts have held that to establish a cause of action under these statutes, one must show that the fraudulent acts were directed towards consumers and would be deceptive to members of the public*.  See Committee On Children's Television, Inc. v. General Foods Corp.*, 197 Cal.Rptr. 783, 791 (Cal. 1983).

Section 6-1-105 of the Colorado Revised Statute, Colorado's Consumer Protection Act ("CCPA"),  has been violated where a plaintiff shows the following: (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged

practice occurred in the course of defendants' business, vocation, or occupation; (3) it significantly impacts the public as actual or potential consumers of the defendants' goods, services, or property; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury. *Anderson v. State Farm Mut. Auto. Ins.,* 416 F.3d 1143. (D.Colo. 2005). However, misrepresentations made in the context of a contract between two parties is not "public" in nature. *Martinez v. Lewis*, 942 P.2d 1219, 1226 (Colo. 1996).

The Michigan Consumer Protection Act ("MCPA") has been violated upon a showing that an individual or her business has engaged in unfair, unlawful, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce; and such acts are enumerated in the statute. *See* M.C.L. § 445.903; *see also Hartman & Eichhorn Building Company, Inc. v. Dailey,* 701 N.W.2d 749 (Mich. 2005). However, the MCPA is not applicable for goods purchased for primarily business or non-personal uses. *Zine v. Chrysler Corp.*, 600 N.W.2d 384, 392-93 (Mich. 1999). Therefore, because the Shark systems were not purchased for plaintiffs' personal use, the MCPA would not apply. Plaintiffs fail to state a cause of action under M.C.L. § 445.356, Michigan's statute prohibiting untrue, deceptive, or misleading advertising, because the statute only prohibits acts affecting the general public.

Section 349 of the New York General Business Law gives private citizens a right of action for deceptive acts or practices in the conduct of any business, trade or commerce. Under the statute, citizens can enjoin an unlawful act or practice,

recover the greater of actual damages or $50.00 and/or obtain reasonable counsel fees. *See* N.Y. Gen. Bus. Code § 349 (2005). However, section 349 is limited in that it will only apply to a "challenged act or practice was consumer oriented, that is, it must have a broad impact on consumers at large." *See U.W. Marx, Inc. v. Bonded Concrete, Inc.,* 7 A.D. 3d 856, 858 (N.Y. 2004) (stating that a contract between two entities in a business transaction would not affect consumers generally within the meaning of section 349).

The elements to prove a violation of the Washington Consumer Protection Act are: (1) defendant committed an unfair or deceptive act; (2) the act occurred in the conduct of trade or commerce; (3) the act has an impact on the public interest; (4) plaintiff's injury was caused by defendant's act. *Northwest Strategies, Inc v. Buck Medical Servs., Inc.*, 927 F. Supp. 1343 (W.D. Wash. 1996). Nevertheless, this statute is not violated in the absence of a public impact, and a deceptive act that does not affect a substantial portion of the public will not be actionable. *Segal Co. v. Amazon*, 280 F. Supp. 2d 1229, 1233 (D. Wash. 2003).

Under the Wisconsin Deceptive Trade Practices Act, deceptive trade conduct targeted at the public will violate the act if a plaintiff can prove that the defendant has, with the specified intent, made an "advertisement, announcement, statement or representation ... to the public," which contains an "assertion, representation or statement of fact" that is "untrue, deceptive or misleading," and that the plaintiff has sustained a pecuniary loss as a result of the "assertion, representation or statement of fact." Wis. Stat. § 100.18(1)(2005). Under this statute, acts occurring between

parties with a special relationship, such as a contractual relationship, may not be remedied under section 100.18 because they do not affect "the public." *See Kailin v. Armstrong*, 643 N.W.2d 132, 149 (Wis. 2002).

The plaintiffs fall short of stating a claim under each of these statutes because these statutes make it a point to penalize acts that are deceptive to the general public, not conduct relating to a private cause of action such as this case. The fraudulent and deceptive conduct alleged in this case was directed towards plaintiffs alone in the context of the contractual relationship they had with the defendants regarding the Shark systems, thereby taking it out of the scope of conduct these statutes were intended to remedy. The court appreciates that the fraudulent misrepresentations defendants made concerning the product could very well have a "public" impact, but not in the parlance of the statutes concerned. The court is therefore obliged to dismiss Count Four.

### III.  COUNT EIGHT

At Count Eight, plaintiff D and B alone alleges that defendants fraudulently promised to plaintiffs that they would compensate plaintiffs for training school costs. (Amended Complaint ¶ 89.) D and B alleges that defendants "deliberatively and intentionally made false or misleading statements or omissions of material fact for the purpose of inducing [D and B] Automotive Equipment to rely on them." (*Id.* at ¶ 90.)  D and B asserts that this misconduct caused damages related to the costs associated with the construction, establishment, and administration of the training school. (*Id.* at ¶ 93.)   The Sales Representation Agreements for plaintiffs each

include at paragraph 12, a clause relating to "Training and Operation of Racks and Measurement Systems," which states:

> [t]he Representative acknowledges that it is necessary for each purchaser of a rack and or Laser Measurement System, and/or Delta 3 and/or Shark, to attend the CRE school at CRE's National Training Center to learn proper use and operation of that equipment, and that it is the Representative's responsibility to see that the purchaser attends. The Representative agrees that CRE will <u>not</u> be responsible for tuition, room, board, travel costs, or other expenses for persons attending the CRE school.

(Exh. A, B, & C).

Defendants move to dismiss this count on similar grounds to Count Two; that the Wisconsin's economic loss doctrine bars relief on this basis. First, these damages are economic in nature because they relate to inadequacies with the subject matter of the contract, rather than property or personal injuries unrelated to the subject matter of the contract. *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 573 N.W.2d 842, 845 (Wis. 1998). More significantly, the fraud claims relate directly to subject matter of the contract, therefore, they are appropriately barred by the economic loss doctrine. *See Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 242 (Wis. 2004). The court agrees with the defendants that these claims are barred by the economic loss doctrine, and pursuant to the discussion regarding economic loss doctrine above, it is similarly obliged to dismiss Count Eight of the complaint.

## IV. COUNT ELEVEN

At Count Eleven, plaintiffs D and B and Fizone allege that defendant Cox made defamatory comments relating to plaintiffs that constitute slander per se. Specifically, D and B and Fizone allege that at multiple staff meetings on or about

- 16 -
Case 2:03-cv-00141-JPS   Filed 03/27/06   Page 16 of 20   Document 73

May and June of 2001, Cox stated that Fizone was a "liar, thief, and a crook," and that Fizone and D and B "were not to be trusted." (Amended Complaint ¶ 110.)

To prevail on a claim for defamation in Wisconsin, a plaintiff must establish the following elements: (1) a false statement; (2) communicated by speech, conduct, or in writing to a third person; (3) that is unprivileged and tends to harm one's reputation so as to lower that person in the estimation of the community or deters others from associating or dealing with the person. *Torgerson v. Journal/Sentinel, Inc.*, 563 N.W.2d 472, 477 (Wis. 1997). Defendants do not pose contention with the first element for a defamation action, that a false statement was made; rather, they argue that the plaintiffs have failed to make a prima facie case because the statements were not communicated to a third person, or if they were communicated they are constitutionally protected expressions of opinion, or alternatively, Cox may not be held liable for these statements because the statements were made in the scope of his employment.

Defendants first point to a criticized theory of law that has caused a split in jurisdictions [2]; that an intra-corporation statement is not "published" for purposes of defamatory actions. In some jurisdictions, courts have carved out exceptions to the general rule of publication in the context of defamation actions when the only ears the statements fall upon are those of the defendants' employees or co-workers. However, several jurisdictions, and the Restatement of Torts 2d, do not find this

---

[2] *See Wallulis v. Dymowski,* 918 P.2d 755, 758-59 (Or. 1996)(stating that although several states have adopted the intra-corporation exception, and several states have also rejected the intra-corporation exception).

position compelling. The Restatement details that "communication in the context and scope of employment by one agent to another agent of the same principal is a publication" Restatement Torts 2d § 577 (1977). Furthermore, defendants' main reliance upon *Halsell v. Kimberly-Clark Corp.,* 683 F.2d 285, 289 (8th Cir. 1982), is somewhat misplaced to the extent defendants argue it provides an unequivocal holding that intra-corporation communications are not "published" for defamation purposes. *Halsell* cites two Wisconsin court opinions, *Lehner v. Associated Press*, 254 N.W. 664, 666 (1934) and *Flynn v. Reinke*, 225 N.W. 742, 744 (Wis.1929) in its discussion that intra-corporation communications are not "published." However, *Lehner* and *Flynn* are distinguishable to this case for two reasons. First, *Lehner* spoke mainly to the concept of "privilege" in defamation actions; that intra-corporation communications often relate to matters of common interest for employees such that these statements are not actionable under defamation law because they are privileged. *Lehner*, 254 N.W. at 666. *Flynn's* holding related to matters that were communicated within a corporation via telegraph; the court held that "transmission of such a message from agent to agent within its own organization in the usual and ordinary course of business should be held to be a privileged communication." *Flynn*, 225 N.W. at 744. Further factual discovery could provide information regarding privilege, if the statements were made in the regular course of business, or if the communications were actually limited to only the persons within the corporation; however, at this stage, more factual details are necessary to make such determinations.

At this stage, the court is also not convinced that this count should be dismissed merely because defendants claim Cox was expressing an opinion. The court agrees that defamatory statements generally must be in the form of facts rather than opinions, but courts have refused to offer a blanket exception to all opinions in defamation actions. *Kaminske v. Wisconsin Cent. Ltd,* 102 F.Supp.2d 1066, 1080 (E.D. Wis. 2000). Also, whether this count should be dismissed under the doctrine of respondeat superior would also need to be further fleshed out with facts beyond mere pleadings to determine if it was applicable.

Defamatory statements must be viewed through the context in which they were communicated, and the court does not have the benefit of further facts to make a reasoned inquiry into the contexts of the statements. *See Frinzi v. Hanson*, 140 N.W. 2d 259, 276 (noting that a consideration of context and circumstances under which statements are made is a necessary evaluation of defamation claims). While defendants' points are well-taken, the court is not confident that the plaintiffs would not be able to establish any set of facts warranting a claim. Even if Wisconsin law bars intra-corporation communications, plaintiffs may be able to flesh out facts detailing that the statement was communicated to persons outside the corporation, that they were not merely opinions as suggested by the defendants, or that the respondeat superior doctrine is not applicable. What is clear at this stage is that dismissal of Count Eleven would be premature, and the motion to dismiss Count Eleven is denied.

Accordingly,

**IT IS ORDERED** that the motion to dismiss Count Two of the Amended Complaint be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that the motion to dismiss Count Four of the Amended Complaint be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the motion to dismiss Count Eight of the Amended Complaint be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that the motion to dismiss Count Eleven of the Amended Complaint be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 27th day of March, 2006.

BY THE COURT:

s/J.P. Stadtmueller
J.P. STADTMUELLER
U.S. District Judge